UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DENVER GOREE,

        Plaintiff,

v.

MICHIGAN PAROLE BOARD,

        Defendant.
_____/

Case No. 1:19-cv-395

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the Michigan Parole Board.

Plaintiff alleges that on or about January of 1983, the Michigan Parole Board held an executive session and gave Plaintiff a commutation score of 22 years. At this time, Plaintiff had served 14 years of his life sentence. Plaintiff claims that he received a receipt from the chairman of the parole board, confirming that his score was 22 years. Plaintiff states that this confirmation gives him a liberty interest in being released on parole.

Plaintiff alleges that in 1992, new members came onto the Parole Board and that they implemented a new policy that "life means life." Plaintiff has now served 50 years on his sentence after receiving multiple 5 year flops with no other explanation than "no interest." Plaintiff contends that his continued incarceration violates his constitutional rights.

Plaintiff seeks a recommendation for commutation or immediate discharge from prison. Plaintiff also seeks damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

Plaintiff states that he is currently serving a nonparolable life sentence in a Michigan prison. Plaintiff appears to be claiming that following his conviction and sentence, the Michigan Parole Board changed its policies in regard to its commutation procedures in a manner that violates the Ex Post Facto Clause of the United States Constitution. Plaintiff also asserts that the Parole Board's action created a liberty interest to recommend commutation to the governor after Plaintiff served 22 years of his life sentence.

Initially, the Court notes that Plaintiff has named the Michigan Parole Board as the sole defendant, not any one or more of the individual members of the board. The Michigan Parole Board is part of the Michigan Department of Corrections. Mich. Comp. Laws § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Michigan Department of Corrections, is immune from injunctive and monetary relief. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (holding that both the MDOC and the parole board are entitled to immunity under the Eleventh Amendment); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004) (same); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (same). In addition, the Michigan Parole Board is not a "person" who may be sued under §1983 for money damages. *See Harrison*, 722 F.3d at 771.

According to the MDOC Offender Tracking Information System, Plaintiff was convicted of first-degree murder following a jury trial and was sentenced to life in prison without the possibility of parole on June 26, 1969. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=111992. Since that time, Plaintiff has been serving his life sentence in Michigan. Although Plaintiff's sentence makes him permanently ineligible for parole, his sentence can be commuted by the governor of Michigan. The Michigan Parole Board has the power to review a prisoner's case and to recommend to the governor that a prisoner's sentence be commuted. *Lewis-El v. Sampson, et al.*, 649 F.3d 423, 423-24 (6th Cir. 2011) (*citing* Mich. Comp. Laws § 791.244). Plaintiff claims that in 1983, he was screened by Michigan Parole Board members pursuant to the guidelines in effect at that time. According to the guidelines, Plaintiff received a score of 22 years, which he understood to mean that the Parole Board would recommend commutation of Plaintiff's sentence to the governor after he served 22 years in prison.

Plaintiff's claim that he has a liberty interest in being recommended for commutation is without merit.[1] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege

---

[1] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493

4

the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in the commutation of his sentence. The Supreme Court has recognized that an inmate has no constitutional or inherent right to commutation of his sentence. *See District Attorney's Office v. Osborne*, 129 S. Ct. 2308 Ohio *Adult Parol Auth. v. Woodard*, 523 U.S. 272, 280 (1998); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (holding that an inmate has no constitutional entitlement to release on parole). Clemency proceedings ordinarily are left to the discretion of the executive and "'are rarely, if ever, appropriate subjects for judicial review.'" *Woodard*, 523 U.S.

---

(1973). However, a prisoner that challenges parole or commutation procedures when not seeking immediate release may bring his claim under 42 U.S.C. § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005); *see also Thomas v. Eby*, 481 F.3d 434, 439-40 (6th Cir. 2007) (challenge to parole procedures may proceed under § 1983 because it does not automatically imply a shorter sentence); *see also Woodard v. Ohio Adult Parole Auth.*, 107 F.3d 1178, 1187 (6th Cir. 1997), *rev'd on other grounds*, 523 U.S. 272 (1998) (claim challenging constitutionality of a state's clemency or commutation proceeding is not a basis for habeas relief, but as a civil rights action, because it does not challenge the validity of a prisoner's confinement). Because Plaintiff appears to challenge the review process and does not seek release from prison, his action may proceed under § 1983.

5

at 280 (quoting *Dumschat*, 452 U.S. at 464); *see also Workman v. Summers*, 111 F. App'x 369, 371 (6th Cir. 2004); *Workman v. Bell*, 245 F.3d 849, 851 (6th Cir. 2001). While judicial intervention may be appropriate in extraordinary death penalty cases to ensure that the procedure is not entirely arbitrary, non-death cases do not implicate any federal interest. *See Woodard*, 523 U.S. at 289 (O'Connor, J., concurring with three other Justices and distinguishing *Dumschat*, a non-death case); *Workman*, 245 F.3d at 851.

Because Petitioner has no constitutional right to commutation of his sentence, a liberty interest is present only if state law entitles an inmate to clemency. States may create a protectable liberty interest through the enactment of regulations and procedural rules that limit the discretion of state officials in making parole or commutation decisions. *Greenholtz*, 442 U.S. at 7; *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983). However, the Supreme Court has recognized that such liberty interests ordinarily involve only those restrictions that place "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Woodard*, 523 U.S. at 283. "Thus, *Sandin* teaches that we should be hesitant to find a protected liberty interest in policy directives governing parole or commutation hearings, given that a change in the state's procedures typically will not cause a significant hardship on the inmate in relation to the ordinary incidents of prison life." *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *see also Woodard*, 523 U.S. at 283.

Under the Michigan Constitution, the Governor has the exclusive power to grant commutations and pardons:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed

> by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor.

Mich. Const. 1963, art. 5, § 14. The Governor's constitutional power to commute sentences is broadly discretionary. *See id.* In light of this discretion, the Sixth Circuit has concluded that Michigan prisoners do not have a state-created liberty interest in the Michigan Parole Board's procedures in recommending to the Governor whether a sentence should be commuted. *See Manning v. Unknown Parties*, 56 F. App'x 710, 711 (6th Cir. 2003); *Moran*, 1996 WL 304344, at *2; *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *see also Goree v. Burt*, No. 05-CV-74592, 2006 WL 3832814, at *1 (E.D. Mich. Dec. 28, 2006) (rejecting the proposition that Mich. Parole Bd. Policy Directive 45.12 creates a liberty interest in eligibility for sentence commutation). As the *Dumschat* Court concluded about Connecticut commutation procedures, a Michigan "felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Dumschat*, 452 U.S. at 465 (footnote omitted). Because Plaintiff has no liberty interest in the commutation of his sentence, he fails to state a procedural due process claim.

As noted above, Plaintiff claims that the Michigan Parole Board's change of policy regarding the recommendation of commutations violated the Ex Post Facto Clause. The Sixth Circuit addressed this issue in *Lewis-El*, 649 F.3d 423. In *Lewis-El*, the Sixth Circuit assumed for the sake of argument that changes in commutation procedures are subject to the same ex post facto test as changes in parole procedures. *Id.* In such cases, "'the relevant inquiry . . . is not whether the challenged [provision] is "law" or whether the guidelines present a significant risk of increasing the plaintiff's maximum penalty, but rather whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served . . . .'" *Id* at 426.

(quoting *Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir. 2007) (citing *Garner v. Jones*, 529 U.S. 244 (2000)). "Because of the fundamentally discretionary nature of gubernatorial commutation in Michigan, that test cannot be met." *Id.* The *Lewis-El* court reasoned that, because the results of commutation decisions are "so tied to the personal predilections of the person occupying the governor's office," it would be virtually impossible to show that any change in commutation rates was caused by changed commutation procedures. *Id.* at 427 (citing *Snodgrass v. Robinson*, 512 F.3d 999, 1002 (8th Cir. 2008)). For the reasons set forth in *Lewis-El*, Plaintiff's Ex Post Facto Clause claim is properly dismissed.

Finally, the Court notes that Plaintiff's claim is barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff asserts that the policy was changed in 1992. Plaintiff would have served more than 22 years on his sentence at this point and would have been eligible for a recommendation to the governor that his sentence be commuted. Therefore, Plaintiff had reason to know of the "harms" done to him at the time the policy was changed. Hence, his claims accrued in 1992. However, Plaintiff did not file his complaint until 2019, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). Because the allegations in this case show that relief is barred by the applicable statute of limitations, Plaintiff's complaint is subject to dismissal for failure to state a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Finally, the Court notes that Defendant's motion to dismiss for insufficient service of process (ECF No. 7) and Plaintiff's motion to respond to Defendant's motion to dismiss (ECF No. 11) will be denied as moot.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    June 28, 2019                        /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                CHIEF UNITED STATES DISTRICT JUDGE